UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| DORCAS R. OBO Z.V.,[1] | § | |
| | § | |
| Plaintiff, | § | Case # 1:21-cv-668-DB |
| | § | |
| v. | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Dorcas R. ("Plaintiff") brings this action on behalf of Z.V., a child under the age of eighteen, pursuant to Title XVI of the Social Security Act (the "Act"). Plaintiff seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Z.V.'s claim for supplemental security income ("SSI"). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the case is before the undersigned in accordance with a standing order (*see* ECF No. 10).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 8. Plaintiff also filed a reply. *See* ECF No. 9. For the reasons set forth below, Plaintiff's motion (ECF No. 7) is **DENIED**, and the Commissioner's motion (ECF No. 8) is **GRANTED**.

## <u>BACKGROUND</u>

On August 7, 2012, Plaintiff protectively filed an application for child's SSI benefits on behalf of her minor daughter, Z.V. Transcript ("Tr.") 189. In a determination dated July 24, 2013,

---

[1] The Court notes that there is inconsistency in the record regarding the claimant's initials. Agency records indicate that the claimant's full name corresponds to the initials "Z.N.V." *See, e.g.*, Tr. 85. Plaintiff's initial complaint (the "Complaint") indicates the initials "Z.V." *See* ECF No. 1-6. However, briefings submitted by both Plaintiff and the Commissioner use the initials "A.N.V." *See, e.g.*, ECF Nos. 7, 8. The Court will refer to the claimant as "Z.V.," as documented in the Complaint.

Z.V. was found to be disabled as of August 7, 2012. Tr. 99-107. Following a continuing disability review, the Commissioner determined that Z.V., who was age 7, was no longer disabled as of August 2, 2017. Tr. 97. This determination was upheld upon reconsideration after a disability hearing by a State Agency Disability Hearing Officer (Tr. 98), after which a request for hearing was filed on Z.V.'s behalf. Tr. 25.

On November 5, 2019, Administrative Law Judge Rosanne M. Dummer ("the ALJ") conducted a video hearing from Falls Church, Virginia. Tr. 25. Plaintiff and Z.V. appeared and testified in Buffalo, New York. Tr. 25, 53. Although informed of the right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative. Tr. 25, 55.

On September 17, 2020, the ALJ issued an unfavorable decision, finding Z.V. was no longer disabled as of August 2, 2017. Tr. 25-45. On April 8, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's September 17, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    Standard for Determining Medical Improvement for Disabled Child's SSI Benefits

The Act provides for the Commissioner to promulgate standards for determining medical improvement that are to be applied "on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." 42 U.S.C. § 423(f)(4). Accordingly, the Commissioner applies a three-step sequential evaluation to determine whether a child, once disabled, remains disabled under the Act. 20 C.F.R. § 416.994a(b)(1-3). Medical improvement is defined as "any decrease in the medical severity of the impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled[,]" *i.e.*, the comparison point decision ("CPD"). 20 C.F.R. § 416.994a(c).

At the first step, the ALJ decides whether there has been medical improvement in the impairment the claimant had the time of the CPD. 20 C.F.R. § 416.994a(b)(1). If there has been medical improvement, the ALJ proceeds to step two. The second step addresses whether the impairments at the time of the CPD still meet or equal the severity of the listings it met or equaled in the CPD. 20 C.F.R. § 416.994a(b)(2).

At step three, the ALJ must determine if the claimant is currently disabled under the rules in 20 CFR 416.924(c) and (d), considering all the impairments that the claimant has now, including any not present or not considered at the CPD (20 CFR 416.994a(b)(3) and SSR 05-03p). The ALJ must determine whether the claimant has a medically determinable "severe" impairment or a combination of impairments that is "severe." For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight

abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. If there is no medically determinable severe impairment(s), the claimant is no longer disabled (20 CFR 416.994a(b)(3)(i)). If the claimant has a severe impairment or combination of impairments, the ALJ must determine if the impairment(s) meets or medically equals the severity of any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. If the claimant's current impairment(s) meets or medically equals the severity of any listed impairment, disability continues (20 CFR 416.994a(b)(3)(ii)). If not, the ALJ must determine if the claimant's impairment(s) functionally equals the listings. If the claimant's current impairment(s) functionally equal the listings, disability continues. If not, the claimant's disability has ended (20 CFR 416.994a(b)(3)(iii)).

In determining whether the child's impairment or combination of impairments meets or medically equals a listing, the ALJ must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or

complete activities. 20 C.F.R. § 416.926a(e)(3)(i). If the child has an impairment that meets, and medically or functionally equals the listings, and the impairment meets the Act's duration requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Z.V.'s claim for benefits under the process described above and made the following findings in her September 17, 2020  decision:

1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated July 24, 2013. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairments: speech and language impairment. These impairments were found to functionally equal the listings (20 CFR 416.924(d) and 416.926a).

3. Medical improvement occurred as of August 2, 2017 (20 CFR 416.994a(c)).).

4. The claimant was born on January 18, 2010. Therefore, she was a school-age child, as of August 2, 2017. The claimant is currently a school-age child, age 10 (20 CFR 416.926a(g)(2)).

5. Since August 2, 2017, the impairments that the claimant had at the time of the CPD have not functionally equaled the Listings of Impairments (20 CFR 416.994a(b)(2) and 419.926a and SSR 05-03p).

6. Since August 2, 2017, the claimant has not had an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

7. Since August 2, 2017, the claimant has had the following severe impairments: migraine headaches (Ex. 17F; 19F), Chiari malformation I, encopresis (Ex. 16F; 19F), other specified disruptive, impulse-control, and conduct disorder (Ex. 11F/5) (20 CFR 416.924(c)).

8. Since August 2, 2017, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

9. Since August 2, 2017, the claimant has not had an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

10. The claimant's disability ended as of August 2, 2017, and the claimant has not become disabled again since that date (20 CFR 416.994a).

Tr. 25-45.

Accordingly, the ALJ determined that, the claimant's disability under section 1614(a)(3)(C) of the Social Security Act ended as of August 2, 2017, and the claimant has not become disabled again since that date. Tr. 45.

<u>**ANALYSIS**</u>

Plaintiff asserts two points of error. Plaintiff first argues that the ALJ failed in her heightened duty to develop the medical record in light of Plaintiff's *pro se* status. *See* ECF No. 7-1 at 1, 14-18. Plaintiff's second point argues that the ALJ failed to consider how Z.V.'s current impairments functionally equal a listing because her "conclusory" domain determinations were not supported by substantial evidence. *See id*. at 18-30. Specifically, Plaintiff argues that the ALJ did not properly assess Z.V.'s functioning in the domains of: (1) health and physical well-being; (2) caring for oneself; (3) acquiring and using information; and (4) attending and completing tasks. *See id*.

The Commissioner argues in response that the record was fully developed because it properly included the evidence considered in the CPD, as well as updated medical and educational records, opinion evidence, and a medical expert's opinion. *See* ECF No. 8-1 at 8-9. With respect to Plaintiff's second point of error, the Commissioner argues that substantial evidence supports the ALJ's finding that Z.V. did not functionally equal the Listings because she did not have a "marked" limitation in two or more of the six functional domains or an "extreme" limitation in one domain. *See id*. at 9-19.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record and the ALJ's decision, the Court finds that the ALJ diligently developed the record and thoroughly considered all the evidence in the record in evaluating Z.V.'s functioning, including evidence of Z.V.'s functioning level at the CPD. Based on the treatment records, educational records, testimony, a consultative examination, state agency consultant opinions, and a medical expert's review, the ALJ reasonably determined that Z.V. did not have a marked limitation in two or more of the six domains or an extreme limitation in one domain.  Tr. 28-45; *see* 20 C.F.R. §§ 416.924, 416.926a. Accordingly, the Court finds no error.

Plaintiff argues that remand is warranted because the ALJ failed to adequately develop the record. *See* ECF No. 7-1 at 14-18. Plaintiff first asserts that the ALJ failed to fully develop the record because the record did not include the evidence considered in the CPD. *See id*. at 14-15. However, Plaintiff's assertion is incorrect. As demonstrated by the page citations, the administrative record contains copies of the evidence that was considered in the CPD, including evidence from Buffalo Hearing & Speech Center ("BHSC"), dated April 2012 and June 2012 (Tr. 100, 457-67), and an opinion from speech and language pathologist Elizabeth Mobley, M.S., CCC-SLP ("Ms. Mosley"), dated June 2013 (Tr. 100, 498-517). Furthermore, contrary to Plaintiff's argument, the record reflects that the ALJ specifically considered medical evidence related to the CPD and discussed test results and functional determinations from this time period. Tr. 29, 31, 89, 100, 103, 439, 457-67, 494-519.

The record also reflects that the ALJ diligently attempted to develop the record, including issuing a successful subpoena for records, obtaining a medical expert to review the record, and ordering a consultative examination for speech and language evaluation. *See, e.g*., Tr. 408, 476, 494, 520, 627, 675, 183-85, 651-50, 233-37, 249-53, 657-68, 669-70, 683-86. Furthermore, at the

hearing, the ALJ specifically reviewed the evidence in the file with Plaintiff, noted any outstanding records, and kept the record open in order for additional evidence to be secured. Tr. 55-61. Moreover, the ALJ proffered additional evidence to Plaintiff when it was received after the hearing. Tr. 311-14. Thus, due to the diligence of the ALJ, the record was fully developed.

Plaintiff also argues that the ALJ failed to meet her heightened duty based on Plaintiff's *pro se* status. See ECF No. 7-1 at 15-18. According to Plaintiff, she was not adequately advised of her ability to, and the importance of, submitting evidence in support of her claim. *See id*. However, the record reflects that Plaintiff was sent numerous notices in English and Spanish informing her of the importance of this evidence, as well as letters providing access to all evidence in the Agency's file, and explaining her right to obtain representation. Tr. 231-32, 286, 135-51, 266-74, 131-33, 135-51, 152-53, 154-79, 275-85, 315-19, 182. At the hearing, in addition to reviewing the evidence in the file with Plaintiff, the ALJ gave Plaintiff the option of postponing the hearing to obtain representation. Tr. 55-61. The ALJ even went so far as to inform Plaintiff that, if at any point during the hearing she felt she needed a representative, she would stop the hearing to give Plaintiff a chance to obtain a representative. Tr. 60. Thus, Plaintiff's arguments regarding the development of the record are completely without merit.

Plaintiff next argues that the ALJ's determination that Z.V. did not have a marked limitation in two or more of the six domains was not supported by substantial evidence. *See* ECF No. 7-1 at 18-30. Plaintiff argues that the ALJ failed to adequately consider whether Z.V.'s impairments functionally equaled the listing because: (1) in one portion of the decision she summarily stated that Z.V.'s impairments did not result in marked or extreme limitations; and (2) in another portion of the decision where she articulated less than marked findings, she provided "very brief references to and conclusory statements about Z.V.'s current impairments." *See* ECF No. 7-1 at 21-22. (citing Tr. 36, 39-44). According to Plaintiff, the "remainder of the ALJ's

8

decision does nothing to shed light on how the ALJ determined the various domain findings for [Z.V.'s] *current* impairments." *See id*. at 20 (emphasis in original). In making these arguments, Plaintiff not only mischaracterizes the ALJ's decision but also ignores the ALJ's thorough analysis.

As discussed further below, the Court finds that the ALJ's analysis was more than sufficient. The ALJ summarized and considered Plaintiff's testimony at the hearing (Tr. 30-31), the medical evidence in the record related to the CPD (Tr. 31), the medical evidence during the disabled period before August 2017 (Tr. 31-32), and the medical evidence after August 2, 2017 (Tr. 32-35), and reasonably concluded that it did not support Plaintiff's allegations of disability.

As the ALJ noted, the CPD found Z.V.'s speech impairment functionally equaled a listing because her intelligibility rate was 50%; she appeared functionally more limited than suggested by her testing scores; and she communicated primarily by crying, pointing, pulling, tugging, gestures, and one-to-three-word utterances. Tr. 35, 439, 501. The ALJ then noted that Z.V. made progress in speech therapy, reaching 95-100% intelligibility in July 2017, and was discharged from speech therapy in July 2018 at her parent's request. Tr. 35, 443-45. Further, noted the ALJ, Z.V. was promoted to fourth grade; received instruction in a regular education classroom; and did not have an Individualized Education Plan ("IEP"). Tr. 35, 482, 297-98.

The ALJ next considered Z.V.'s asthma, noting that the impairment was "subject to wax and wane with periods of exacerbation." Tr. 36. As the ALJ noted, Z.V. did not require any hospitalizations other than one brief emergency department care for asthma exacerbation in September 2018 Tr. 36, 470. Otherwise, Z.V.'s symptoms were generally managed through primary care visits and at home with inhalers and medication. Tr. 36 364-67, 411, 566, 575.

The ALJ also noted that Z.V. was treated by a neurologist for her headaches. Tr. 36. The ALJ noted treatment records documenting medication noncompliance, some of which was due to

failure to timely fill prescriptions to treat headaches. Tr. 36, 566, 570. *See Walker v. Berryhill*, No. 6:17-CV-06138 (MAT), 2017 WL 6492520, at *3 (W.D.N.Y. Dec. 19, 2017) ("An ALJ may properly take into account a history of noncompliance with medication or treatment recommendations in assessing credibility."). The ALJ also noted conservative treatment recommendations, including lifestyle modifications such as avoiding contact sports, monitoring symptoms, administering pain medication only three times a week, drinking water, eating meals on time, and getting enough sleep. Tr. 36, 364-67, 410-13, 573, 628-47.

The ALJ also noted that Z.V. treated with a gastroenterologist for constipation and encopresis. Tr. 36. After undergoing a rectal motility study, doctors from UBMD Pediatrics recommended biofeedback therapy to help Z.V. learn more about her body and controlling her bowels. 546, 608, 676-81. However, the ALJ noted that Plaintiff testified that Z.V. was no longer attending UBMD Pediatrics. Tr. 36.

The ALJ also considered the medical opinion evidence. Consulting speech language pathologist Ms. Mobley examined Z.V. on July 10, 2017. Tr. 36. Ms. Mobley opined that Z.V. had a mild phonological/articulation disorder, mild receptive language delays, and moderate expressive language delays, and recommended speech therapy to address deficits. Tr. 36, 384-88. The ALJ afforded Ms. Mobley's opinion significant weight, noting that Z.V.'s speech was 95-100% intelligible in July 2017; she continued to receive speech and language therapy until July 2018 when she was discharged for noncompliance; and she was receiving instruction in a regular education classroom with no IEP. Tr. 36, 297-310, 443. *See* 20 C.F.R. § 416.927(c)(1),(3)-(5); *Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (finding ALJ properly assigned great weight to opinion of consultative examiner because the doctor personally examined plaintiff and reached conclusions consistent with the objective medical evidence); *Snyder v. Colvin*, 667 F.

App'x 319, 320 (2d Cir. 2016); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (report of a consultative physician may constitute substantial evidence).

The ALJ also considered the opinions of state agency consultants B. Stouter, M.D., Pediatrician ("Dr. Stouter"), and J. Meyers, Pediatrician ("Dr. Meyers"), both of whom reviewed the entire record and issued opinions. Tr. 37, 91-92, 436-37. Dr. Stouter opined that Z.V. had less than marked limitations in the domains of acquiring and using information, interacting in relating with others, and maintaining health and physical well-being and no limitations in domains attending and completing tasks, moving about and manipulating objects, and caring for yourself. Tr. 91-92. Dr. Myers opined that Z.V. had less than marked limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, caring for yourself, and maintaining health and physical well-being and no limitation in domain moving about and manipulating objects. Tr. 436-37. The ALJ gave Dr. Stouter's opinion some weight but noted that the totality of the evidence was more consistent with the opinion of Dr. Meyers, who assessed more severe limitations, and was in line with the assessment of medical expert William Silberberg, M.D., Pediatrician ("Dr. Silberberg"). Tr. 36-37, 91-92, 436-37, 683-86.

The ALJ also considered educational records from classroom teacher Dominique Dibble ("Ms. Dibble") and director of special education Carrie Shannon ("Ms. Shannon"). Tr. 37. As the ALJ noted, on February 21, 2020, Ms. Shannon stated that Z.V. received instruction in the regular education setting; did not receive any education services; and had participated in benchmark testing at the beginning and middle of the school year which demonstrated minimal to no progress. Tr. 37, 288-95.

On January 23, 2020, Ms. Dibble submitted a teacher questionnaire stating that Z.V. was in fourth grade but had second grade reading and math skills; and she had "slight" problems in her ability to acquire and use information, with the exception having an "obvious" problem with math

and reading comprehension. Tr. 37, 289-94. Ms. Dibble also noted that Z.V. worked independently but did not ask for help when needed; she could complete assignments quickly and independently, although incorrectly; and she participated in small groups but was easily distracted by others; and she did not participate much in whole group instruction. *Id*. Ms. Dibble also assessed that Z.V. had no-to-slight problems in attending and completing tasks, with the exception of completing work without careless mistakes, as Z.V. had a serious problem in this area. *Id*. Ms. Dibble noted that Z.V. had not completed homework (reading 20 minutes per night as confirmed by a parent signature) in many weeks. *Id*. Although Plaintiff had voiced concerns in the remaining domains, Ms. Dibble observed no problems in these areas. *Id*.

The ALJ afforded Ms. Shannon and Ms. Dibble's statements some weight, noting that medical expert Dr. Silberberg mentioned both of their assessments in his review, finding that their assessments did not reflect very serious concerns in many of the functional domains, with the exception of math and reading comprehension. Tr. 37, 683-86.

As mentioned, medical expert Dr. Silberberg reviewed the record evidence, and on March 27, 2020, submitted answers to interrogatories and discussed his evaluation of the evidence. Tr. 683-85. The ALJ outlined Dr. Silberburg's extensive qualifications and summarized Dr. Silberberg's most pertinent findings, which were supported by detailed citations to the treatment notes, as well as the educational records. Tr. 38-39, 683-86. As the ALJ explained, Dr. Silberburg's opinion was well-reasoned and consistent with the overall record, and therefore, the ALJ reasonably found the opinion was entitled to great weight. Tr. 38-39, 683-86. Accordingly, the Court finds no error in the ALJ's consideration of Dr. Silberburg's opinion.

After engaging in this thorough analysis and discussion of the medical, educational, and opinion evidence, the ALJ next outlined his conclusions in each of the functional domains. As noted previously, Plaintiff challenges the ALJ's findings in the domains of: (1) acquiring and using

12

information; (2) attending and completing tasks; (3) caring for oneself; and (4) health and physical well-being. *See* ECF No. 7-1 at 18-30. In each instance, Plaintiff's argument amounts to a request that the Court reweigh the evidence in her favor. *See id*. However, as shown below, the ALJ's findings in these four domains are supported by substantial evidence in the record, as discussed above.

Although Plaintiff disagrees with the ALJ's finding, Plaintiff has not met her burden of showing that the ALJ's finding was not supported by substantial evidence. *See Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (It is not enough for the plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. The plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record).

### a) Acquiring and using information domain.

The domain of acquiring and using information addresses how well a child learns information and how well the child uses the information learned. 20 C.F.R. § 416.926a(g). The Regulations provide that a school-aged child should be able to read, write, do math, and discuss history and science. 20 C.F.R. § 416.926a(g)(2)(iv). The child should also be able to use "increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [his] own ideas, and by understanding and responding to the opinions of others." *Id*. Further, the child should be able to read about subjects, produce oral and written projects, solve math problems, take achievement tests, do group work, and enter into class discussions. *Id*. Finally, the child should be able to "use these skills in daily living situations at home and in the community (*e.g.*, reading street signs, telling time, and making change)." *Id*.

Social Security regulations 20 CFR 416.926a(g)(3) and SSR 09-3p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in acquiring and using information are: (i) does not understand words about space, size, or time (*e.g.*, in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) does not use language appropriate for age; (v) is not developing "readiness skills" the same as peers (*e.g.*, learning to count, reciting ABCs, scribbling); (vi) has difficulty comprehending written or oral directions; (vii) struggles with following simple instructions; (viii) has difficulty solving mathematics questions or computing arithmetic answers; or (ix) talks only in short, simple sentences, and has difficulty explaining what he means.

In the domain of acquiring and using information, the ALJ listed some of the evidence he considered when assessing less than marked limitations. Tr. 39-40. While Plaintiff takes issue with this discussion, the ALJ's reasoning summarizes his prior lengthy discussion of medical evidence and educational records, outlining both the medical improvement and support for her finding that Z.V.'s current impairments did not cause marked or extreme limitations in this domain. *See id*. Although Plaintiff cites to evidence she believes warrants a finding of more severe limitations (*see* ECF No. 7-1 at 28), she ignores that the ALJ did consider this evidence and reconciled it with other evidence that, taken altogether, did not support a finding beyond "less than marked" limitations. For example, Plaintiff argues that the ALJ failed to consider Ms. Dibble's questionnaire, but as discussed above, the ALJ thoroughly considered this evidence and explained her rationale for the weight assigned. Tr. 37.

Based on the foregoing, the ALJ properly considered the evidence of record in assessing Z.V.'s limitations in domain of acquiring and using information, and substantial evidence supports the ALJ's finding of a less-than-marked limitation in this domain.

    **b)  Attending and completing tasks domain.**

Substantial evidence also supports the ALJ's finding that Z.V. had less than a marked limitation in the domain of attending and completing tasks. This domain addresses how well a child is able to "focus and maintain [] attention, and how well" the child begins, carries through, and finishes his activities, including the pace at which he performs activities and how easily he can change activities. 20 C.F.R. § 416.926a(h)(iv). The Regulations provide that a school-aged child should be able to focus his attention to a variety of situations to follow directions, remember and organize his school materials, and complete classroom and homework assignments. *Id*. The child should also be able to concentrate on details and not make careless mistakes in his work, other than mistakes that other children his age, who do not have impairments, would make. *Id*. Further, the child should be able to change his activities or routines without distracting himself or others, and stay on task and in place when appropriate; he should be able to sustain attention well enough to participate in group sports, read by himself, and complete family chores; and should be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. *Id*.

The regulations also set forth some examples of limited functioning in this domain that children of different ages might have. *See* 20 CFR 416.926a(h)(3); SSR 09-4p. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods.  In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in attending and completing tasks are: (i) is easily startled, distracted, or over-reactive to everyday sounds, sights, movements, or

touch; (ii) is slow to focus on, or fails to complete, activities of interest (*e.g.*, games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; (v) requires extra supervision to remain engaged in an activity; or (vi) cannot plan, manage time, or organize self in order to complete assignments or chores.

The ALJ determined that since August 2, 2017, Z.V. had less than a marked limitation in attending and completing tasks as a result of the impairments present at the CPD. Tr. 40. As the ALJ noted, an IEP reflected that Z.V. was distracted during testing and required frequent redirection, but she did not have a history of attention deficit hyperactivity disorder. Tr. 40-41, 348, 434-39. The ALJ also noted testimony that Z.V. rides a bus to school with up to 30 students; she has pet fish and a cat at home; and helps with feeding the cat and cleaning the litter box. Tr. 41. The ALJ also noted Ms. Dibble's report that Z.V. did not complete homework, and she struggled with completing work accurately without making careless mistakes. Tr. 41, 289-90. However, as the ALJ also noted, Ms. Dibble assessed only slight problems overall in this area. *Id*. Based on this evidence, as well as similar evidence from state agency medical consultant Dr. Meyer (Tr. 436) and medical expert Dr. Silberberg (Tr. 685), the ALJ reasonably determined that Z.V. had less than marked limitations in this area. Tr. 41.

Plaintiff argues that the ALJ failed to consider her testimony and Ms. Dibble's questionnaire when assessing less than marked limitations in attending and completing tasks. *See* ECF No. 7-1 at 29. However, as previously noted, the ALJ explicitly considered Ms. Dibble's questionnaire and reports of Z.V.'s difficulties with distraction, completing homework, and avoiding careless mistakes. Tr. 40-41, 288-95, 434-39, 683-86.

Thus, substantial evidence of record supports the ALJ's finding, and while Plaintiff may disagree with the ALJ's conclusions in this domain, her mere disagreement with the ALJ's findings

does not warrant remand. Even if the evidence demonstrated some limitation in this domain, that would not be enough, as Plaintiff must produce evidence showing marked, *i.e.*, more than moderate, limitation in at least two functional domains. *See* 20 C.F.R. §§ 416.926a(d); *see also Brault*, 683 F.3d at 448. The question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran*, 569 F.3d at 112. As discussed above, there is such evidence.

### c) Caring for yourself domain.

The ALJ's finding in the domain of caring for yourself is likewise supported by substantial evidence. This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways. This includes how the child copes with stress and changes in the environment and how well the child takes care of his own health, possessions, and living area. 20 CFR 416.926a(k); SSR 09-7p.

Social Security rules provide that a school-age child without an impairment should be independent in most day-to-day activities (*e.g.*, dressing and bathing), although he may still need to be reminded sometimes to do these routinely. The child should begin to recognize that he is competent in doing some activities but has difficulty doing others. The child should be able to identify those circumstances when he feels good about himself and when he feels bad. The child should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. The child should also begin to demonstrate consistent control over his behavior and be able to avoid behaviors that are unsafe or otherwise not good for him. At this age, the child should begin imitating more of the behavior of adults he knows. 20 CFR 416.926a(k)(2)(iv); SSR 09-7p.

As with the other domains, the regulations set forth some examples of limited functioning in this domain that children of different ages might have.  20 CFR 416.926a(k)(3); SSR 09-7p. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain.  Some examples of difficulty children could have in caring for themselves are: (i) continues to place non-nutritive or inedible objects in the mouth (*e.g.*, dirt, chalk); (ii) often uses self-soothing activities that are developmentally regressive (*e.g.*, thumb-sucking or re-chewing food); (iii) does not feed, dress, toilet, or bathe himself age appropriately; (iv) engages in self -injurious behavior (*e.g.*, suicidal thoughts or actions, self-inflicted injury, or refusal to take medication), or ignores safety rules; (v) does not spontaneously pursue enjoyable activities or interests (*e.g.*, listening to music, reading a book); (vi) has restrictive or stereotyped mannerisms *(e.g.*, head banging, body rocking); or (vii) has disturbances in eating or sleeping patterns.

In this domain, Plaintiff argues that the ALJ erred in concluding that Z.V. had no limitation in the ability to care for herself because the ALJ discounted symptoms related to Z.V.'s incontinence. *See* ECF No. 7-1 at 26. However, the ALJ noted that the teacher questionnaire submitted by Ms. Dibble specifically noted no problems in this domain, stating that Z.V. "has never struggled in this area in [her] classroom. Her mother did express concern with this topic with me over the phone." Tr. 293. Thus, it was relevant to the ALJ's analysis that Z.V.'s classroom teacher had not observed any issues in her ability to care for herself. Furthermore, it was appropriate and reasonable for the ALJ to consider this stark contrast in Plaintiff's testimony when compared to the evidence, because despite Plaintiff's allegations of incontinence issues, Z.V. functioned without limitation in the classroom. Tr. 293.

Although Plaintiff attempts to argue that the ALJ's consideration of these impairments was inadequate (*see* ECF No. 7-1 at 26), the ALJ considered exactly the records and diagnoses to which Plaintiff points in her argument. *See* Tr. 43. Furthermore, the ALJ does not have to recite every piece of evidence to explain his or her rationale. *Ruano Juarez o/b/o R.R.O. v. Berryhill*, No. 18CV189 (LMS), 2019 WL 2162120, at *8 (S.D.N.Y. May 16, 2019), *aff'd sub nom. Juarez on behalf of R.R.O. v. Saul*, 800 F. App'x 63 (2d Cir. 2020) ("where 'the evidence of record permits the court to glean the rationale of an ALJ's decision, the court does not require that he or she have mentioned every item of testimony presented to him or her or have explained why he or she considered particular evidence unpersuasive or insufficient to lead him or her to a conclusion of disability.") (quoting *Mongeur*, 722 F.2d at 1040; citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (declining to remand where the court was "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his or her determination was supported by substantial evidence.")).

Accordingly, Plaintiff has not met her burden of showing that remand is warranted for the ALJ to reconsider Z.V.'s functioning in this domain. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration.").

**d) Health and physical well-being domain.**

Substantial evidence also supports the ALJ's finding that Z.V. had less than a marked limitation in the domain of health and physical well-being. This domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects (20 CFR 416.929a(1)).

Social Security regulation 20 CFR 416.926a(l)(3) sets forth some examples of limited functioning in this domain that children of any age might have; however, the examples do not necessarily describe marked or extreme limitation in the domain. Some examples of difficulty children could have involving their health and physical well-being are: (i) generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of any impairment(s); (ii) somatic complaints related to an impairment (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches or insomnia); (iii) limitations in physical functioning because of treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); (iv) exacerbations from an impairment(s) that interfere with physical functioning; or (v) medical fragility requiring intensive medical care to maintain level of health and physical well-being.

As the ALJ noted, Z.V. receives routine treatment for asthma, and the record was devoid of specialized pulmonary treatment and hospitalization other than one brief emergency department care for asthma exacerbation in September 2018 Tr. 44, 470. Otherwise, primary care notes reflected routine well child examinations and follow up for chronic and acute conditions. Tr. 44, 566-612. The ALJ also noted that Z.V. was under the care of a neurologist for headaches and a gastroenterologist for encopresis, but reasonably determined, that the aforementioned evidence, as well as the opinions of state agency medical consultant Dr. Meyers and medical expert Dr. Silberberg, supported less than marked limitations in this area. Tr. 44. Therefore, substantial evidence in the record supported the ALJ's conclusion that Z.V. had less-than-marked limitations in this domain. Tr. 28. Once again, while Plaintiff may disagree, she has not shown that no reasonable factfinder could have reached the same conclusion based on the evidence of record. *See Brault*, 683 F.3d at 448.

20

In summary, the ALJ thoroughly reviewed the entire record, including treatment records, educational records, testimony, a consultative examination, state agency consultant opinions, and a medical expert's review, and reasonably concluded that Z.V. had less than marked limitations in the six functional domains,. *See Lowry v. Astrue*, 474 F. App'x 801, 805 (2d Cir. 2012) (rejecting plaintiff's contention that ALJ failed to meaningfully explain his reasons for not crediting certain evidence in finding that child's impairments did not functionally equal listings) (citing *Mongeur*, 722 F.2d at 1040); *Caron v. Colvin*, 600 F. App'x 43, 44 (2d Cir. 2015) (observing that, under the substantial evidence standard, the fact that the evidence may arguably be reconciled to a claimant's favor is "not probative of anything" as long as the ALJ's different interpretation was reasonable).

Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. As discussed above, Plaintiff's mere disagreement with the ALJ's findings does not warrant remand. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). As previously noted, the question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran v*, 569 F.3d at 112. As explained above, there is such evidence here. The Court accordingly finds no error in the ALJ's determination that Z.V. is not disabled.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE